UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

RICHARD REYNOLDS,           )
                            )
          Plaintiff,        )
                            )       05-2138
     v.                     )
                            )
DAWN JAMISON and CHRISTOPHER )
DARR,                       )
                            )
          Defendant.        )

## ORDER

The plaintiff, Richard Reynolds ("Reynolds"), complains of the defendants Dawn Jamison ("Jamison") and Urbana police officer Christopher Darr ("Darr"). Reynolds alleges that on or about July 12, 2004, Darr arrested him after Jamison reported that Reynolds harassed her by telephone, and on November 28, 2004, Darr arrested Reynolds after Jamison reported that Reynolds violated an order of protection. Reynolds alleges that both Jamison and Darr knew the reports were unfounded, and he claims they conspired to (1) deprive him of his rights under the Constitution of the United States and the State of Illinois Constitution; (2) falsely imprison and arrest him; and (3) maliciously prosecute him.

## BACKGROUND

Reynolds and Jamison had a romantic relationship that ended sometime in 2004. By all accounts, the relationship had a rocky ending. On July 12, 2004, Reynolds contacted Urbana Animal Control about a dispute with Jamison over a dog Reynolds claimed he owned. Officer Darr and an animal control officer responded to the call and talked to Reynolds. Thereafter, Darr contacted Jamison at her workplace to ask her about the dog. Jamison explained the situation and Darr was apparently satisfied that she had not stolen the dog. During the conversation, Jamison complained to Darr that Reynolds had been harassing her by phone. Darr went to Jamison's office, where she showed him a computer phone log recording 61 phone calls from Reynolds. Jamison thought some of the recent phone calls were threatening. Darr later questioned Reynolds about the phone calls and then arrested him for harassment by telephone. The next day, the Champaign County Circuit Court granted Jamison an order of protection against Reynolds.

On November 28, 2004, Reynolds attended a gathering at his grandparents' home, which

1

is near Jamison's residence. Jamison called[1] to report that Reynolds was violating the order of protection. Darr responded to the call, located Reynolds, and questioned him. Reynolds informed Darr that the order of protection contained an exception for visits to his grandparents' house. Darr alleges he checked the onboard computer in his squad car, the dispatch center, and the Champaign County Jail Records Department and could find no exception to the order of protection. Reynolds was arrested for violating the protective order and spent the night in jail. The charge was dismissed the next day.

The following week, Reynolds pled guilty to the July 12, 2004 charge of harassment by telephone. As one of the conditions of his sentence, he was ordered to stay at least 500 feet from Jamison and her family members.

Five motions are pending: Jamison's motion to appoint counsel [#5]; Darr's motion for summary judgment [#16] and motion to stay discovery [#19]; Jamison's motion for summary judgment [#34], and Jamison's motion to strike Reynolds' response to the motions for summary judgment [#37].

ANALYSIS

I.

Two of Jamison's motions can be dealt with in short order. Appointment of counsel for Jamison is not warranted. Neither the legal issues raised in the complaint nor the evidence that might support the plaintiff's claims are so complex or intricate that a trained attorney is necessary. Jamison is able to discern the claims against her and marshal the evidence in her support. In addition, Darr is represented by counsel, and the claims against Jamison are related to those against Darr. The motion [#5] is denied pursuant to *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005).

Jamison also filed a motion to strike Reynolds' response to the motions for summary judgment as untimely. Jamison, a *pro se* litigant, filed her documents conventionally rather than electronically. She may be unfamiliar with this court's Administrative Procedures for Electronic Filing, which allow an extra three days for filing documents electronically. *See* Admin. Proc. § II(B)(4).[2] According to the docket entry in the court's electronic filing system, Reynolds' response was due on November 3, 2005. He filed his response on November 7, 2005, which was timely in light of Admin. Proc. § II(B)(4). Accordingly, Jamison's motion to strike Reynolds' reply as untimely [#37] is denied.

---

[1] Whether Jamison called Darr or the police dispatcher is a matter in dispute.

[2] Footnote 5 to this section states, "Attorneys should be aware that the response due date, which appears when either electronically filing a motion or querying deadlines, is for court use only and should <u>not</u> be relied upon as an accurate computation of the response date."

II.

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C). Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988).

Once the movant has done so, the party opposing the motion bears the burden to respond, not simply by resting on the pleadings, but by affirmatively demonstrating that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324. In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the non-movant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the non-movant]." *See* Fed. R. Civ. P. 56(e).

"The fact that discovery is not complete--indeed, has not begun--need not defeat the motion. A defendant may move for summary judgment at any time." *Chambers v. American Trans Air*, 17 F.3d 998, 1002 (7th Cir. 1994) (*quoting American Nurses Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986)).

This court's jurisdiction is based on Reynolds' federal claims under 42 U.S.C. § 1983. Therefore, the court's first inquiry relates to those claims. In order to prevail on a Section 1983 claim, Reynolds must show "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person or persons acting under color of state law." *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (*citing Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). There is no question that Darr acted under color of state law when he arrested Reynolds.

Reynolds states that Jamison and Darr knew the complaints against him were unfounded, and argues his arrests were effected to harass and injure him. Darr argues that Reynolds cannot prevail on this claims because, as a police officer acting reasonably in furtherance of his duties, he is entitled to qualified immunity.

The proper standard for qualified immunity is a two-part test. A plaintiff must (1) show a violation of a valid legal right, and (2) demonstrate that the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). "Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was

3

committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The parties dispute numerous facts: ownership of the dog, whether Jamison possesses Reynolds' missing medals from a martial arts competition, the number of phone calls and email messages between Reynolds and Jamison and which of the two initiated those contacts, etc. However, the only *material* facts relate to whether Darr had probable cause to arrest Reynolds on the dates in question.

### A.  The July 12 arrest

Reynolds contends that Darr acted unreasonably by arresting him before receiving written evidence of telephone harassment.  Among the documents submitted by Reynolds is a copy of the July 12, 2004 police report.  The police report discusses the evidence presented to Darr prior to the arrest.  Jamison showed Darr a computerized phone log displaying numerous phone calls from Reynolds.  She told Darr she'd received five phone calls that day, and she considered several of those to be threatening.  Darr then went to Reynolds, questioned him, and arrested him for harassment by telephone.  That the *written* evidence wasn't given to Darr until after the arrest is irrelevant.  Moreover, Reynolds pled guilty to the charge and was sentenced.  A certified copy of the conviction is attached to Darr's motion for summary judgment.  Reynolds explains his reasons for pleading guilty and argues that he was neither tried nor convicted; however, the certified copy of the conviction is conclusive.  Nothing in these facts suggests that discovery would lead to a triable issue.

### II.  The November 28, 2004 arrest

Reynolds and the defendants have different versions of the events leading to Reynolds' November 28, 2004 arrest, but only two of the differences are material.  Reynolds claims he attended a gathering hosted by his grandparents, who live down the street from Jamison.  He further claims – correctly, it seems – that the order of protection allowed him to visit his grandparents' home.[3]  Jamison states that Reynolds did more than visit his grandparents; she

---

[3] Darr located Reynolds in the vicinity, pulled him over to talk to him, and upon checking his onboard computer and two other sources, could find no exception allowing Reynolds to visit his grandparents' home.  Reynolds contends that Darr provides no proof, other than his say-so, to show that he attempted to verify the exception, and for this reason he needs to proceed with discovery to show a factual dispute.  Reynolds further argues it was unreasonable for Darr not to allow him to go home to get the order of protection (or send a family member to get it) to prove the exception existed.  However, a reasonable officer would use his onboard computer to verify the order's existence, and Darr states he did so. Upon Reynolds' admission that he had been in the vicinity of Jamison's home, Darr arrested Reynolds. That Darr did not take *all possible* precautions to verify the terms of the order does not make the arrest unreasonable.  For that reason, it is irrelevant whether Darr checked with the police dispatcher and the Champaign County Jail Records Department for an "amendment," or whether he sought information about

claims he drove his truck back and forth in front of her house, revved the engine, and aimed the truck at her son's bedroom. Darr contends that the police dispatcher received Jamison's call and relayed the information to the on-duty police officers; he responded to the call. Jamison states she called the police. Reynolds states that Darr told him that Jamison had "called him to tell him" that Reynolds was violating the order of protection. This statement, and others allegedly made by Darr, led Reynolds to conclude that Darr and Jamison had a personal relationship. Reynolds claims this undermines Darr and Jamison's credibility and indicates the possibility that the basis for the arrests was concocted between the two. Jamison flatly denies that she had any relationship with Darr.[4]

The existence of a personal relationship between Darr and Jamison, without more, is immaterial. The material issue is whether Darr responded to a police dispatch in the course of his duties as an Urbana police officer, and whether he checked his onboard computer to verify the terms of the order of protection before arresting Reynolds. If he did, then based on the totality of circumstances Darr would have had probable cause to arrest. Reynolds is entitled to seek limited discovery on these issues, and only these issues, to see if there exists a genuine issue of material fact.

The federal claim against Jamison is dependent on the federal claim against Darr. As noted above, there is no question that Darr acted under color of state law when he arrested Reynolds. Jamison is alleged to have acted under color of state law by conspiring with Darr to make false accusations leading to Reynolds' arrest.

> To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were "willful participant[s] in joint activity with the State or its agents." Although a conspiracy certainly may be established by circumstantial evidence, we have stressed that such evidence cannot be speculative.

*Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (internal citations omitted). If Darr is qualifiedly immune from suit because he reasonably believed he had probable cause to arrest Reynolds, he and Jamison could not have conspired to violate a constitutional right.

Accordingly, Reynolds is granted leave to conduct limited discovery on two issues only: whether Darr, while on duty as an Urbana police officer, responded to a police dispatch that resulted in Reynolds' November 28, 2004 arrest, and whether Darr acted prudently during the

---

an "exception." After checking his onboard computer, he need not have done anything further for the arrest to be reasonable.

[4] Darr filed his affidavit before Reynolds alleged the existence of a personal relationship, so Darr has not addressed the allegation.

arrest by checking his onboard computer for the terms of the order of protection.  Because these issues can be explored by deposing Darr and obtaining METCAD and/or Urbana police records, there is no need at this time to depose Jamison.

## CONCLUSION

Jamison's motion to appoint counsel [#5] is denied. Darr's motion to stay discovery [#19] is denied, with limited discovery to proceed as discussed above.  Jamison's motion to strike Reynolds' response to the motions for summary judgment [#37] is denied.  Darr's motion for summary judgment [#16] and Jamison's motion for summary judgment [#34] remain pending.  If, within sixty (60) days of the date of this order, Reynolds does not file a supplemental statement of disputed material facts with supporting documents and memorandum limited to the newly-obtained information, the court will presume there is no opposition and will rule on the motions for summary judgment without further notice to the parties.

Entered this 24th day of January, 2006.

**s\Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT COURT