UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD REYNOLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | )   05-2138 |
| v. | ) |
| | ) |
| DAWN JAMISON and CHRISTOPHER DARR, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On January 24, 2006, this court granted the plaintiff leave to conduct limited discovery in order to show the existence of a genuine issue of material fact with which to oppose the defendants' motions for summary judgment. The court limited discovery to two issues: whether defendant Christopher Darr ("Darr"), while on duty as an Urbana police officer, responded to a police dispatch that resulted in Richard Reynolds' ("Reynolds") November 28, 2004 arrest, and whether Darr acted prudently during the arrest by checking his onboard computer for the terms of the order of protection. Because these issues could be explored by deposing Darr and obtaining METCAD and/or Urbana police records, there was no need at that time to depose defendant Dawn Jamison ("Jamison"). The court ordered Reynolds to file a supplemental statement of disputed material facts with supporting documents and memorandum, limited to the newly-obtained information, within sixty days of the date of its order.

This court's Administrative Procedures for Electronic Filing grant a party three extra days to file a document electronically, pursuant to Federal Rule of Civil Procedure 6(e). *See* Admin. Proc. for CM/ECF, § II(B)(4). When the last day of the time period falls on a Saturday, Sunday or legal holiday, the time period is extended to the next business day. Fed. R. Civ. P. 6(a).

Thus, Reynolds had sixty-three days to file his facts and memorandum. He did so on Monday, March 27, 2006.

Reynolds has conducted limited discovery in opposition to the motion for summary judgment. Darr was deposed and stated that on the evening of November 28, 2004, he was either on duty or in the locker room preparing for duty when METCAD received a call from Jamison that Reynolds' truck was parked across the street from her house and that she had an order of protection against him. Jamison told the dispatcher she did not want an officer to come to her house because she was afraid of retaliation from the family he was visiting across the street. Jamison asked that the police contact her, if needed, by telephone. Darr did not speak with

Jamison that night.

Darr's supervisor, Sgt. Dan Morgan, contacted Darr and asked him to "go with him and investigate." In the meantime, the details of the order of protection were accessed through METCAD and appear on the METCAD "call for service." The details noted no exception for visits to Reynolds' grandparents' house, which is on the same street as Jamison's house. While the officers traveled in separate cars to Jamison's street, Jamison again called 911 and reported that Reynolds was leaving the vicinity and might be heading home or to his parents' house. At that point, Darr stated, the officers shifted their investigation from trying to go to Jamison's street to just trying to locate Reynolds, wherever he might be. Darr states that he located Reynolds, ran his information through LEADS (the Law Enforcement Agency Database System) and verified that Reynolds held a valid drivers license and had an order of protection issued against him. Darr's onboard computer showed that Reynolds needed to stay 500 feet away from Jamison's house, and though Darr did not see where Reynolds' truck had been parked, Reynolds confirmed he had been at his grandparents' house. Darr did not measure the distance between Jamison's home and Reynolds' grandparents, but knew from his familiarity with the area that the distance between the two addresses was "well within 500 feet." Darr Dep. p. 45.

The first issue noted in the court's January 24, 2006 order was whether Darr responded to a police dispatch, or whether he responded to a personal call from Jamison. The deposition and METCAD records clearly show that Jamison called 911, and Darr responded to the call.[1] The second issue noted in the court's order was whether Darr acted prudently during Reynolds' arrest by checking his onboard computer for the terms of the order of protection. The information submitted to the court shows that Darr, acting on a 911 call and a request from his supervisor, located the individual alleged to have violated the order, questioned him, and learned that he had, in fact, been at the prohibited location. Darr checked information available on his onboard computer and, despite Reynolds' assertions, could find no exceptions allowing Reynolds to be near Jamison's house. Darr acted prudently; he was required to do nothing more. Probable cause is not lacking simply because Darr did not follow Reynolds to his home to find the order or allow others to fetch the order for him.

Reynolds points to several other potential issues purported to defeat the motions for summary judgment. He states he should be allowed to determine (1) whether Darr knew at the time he arrested Reynolds that the order of protection allowed Reynolds to be at his grandparents' house, and (2) whether Jamison was a credible victim when she reported the alleged violation.

---

[1] Reynolds continues to contend that he believes that Darr and Jamison had a personal relationship. Jamison denies that they did. Darr filed his affidavit before Reynolds made the allegation, which explained why he did not address the allegation. However, Reynolds argues that Darr moved to strike Reynolds' Additional Fact 5, citing as his basis "that it is irrelevant whether Officer Darr had a personal relationship with Jamison." It is telling that, despite a deposition lasting almost two hours, Reynolds' attorney never put the question to Darr.

Reynolds makes much of the fact that Darr was present at the courthouse in July 2004 when Reynolds was served with the order of protection, and Darr knew, from overhearing discussions between Reynolds and Jamison and their attorneys, that Reynolds could visit his grandparents. However, it is unrealistic to expect a police officer to recall the details of an order of protection issued months earlier, when those details are not included in METCAD's dispatch or the LEADS system. Thus, even if Darr could be expected to recall something about the issue, he can't be expected to recall the finer points of the order of protection. Neither was it realistic to expect Darr to allow Reynolds or someone else to retrieve the order from Reynolds' home. Rather than tempt fate, the wiser course of action would have been for Reynolds to carry the order with him when visiting his grandparents.

As for the second purported question of fact, Darr need not have ascertained whether Jamison was a credible witness before arresting Reynolds. Darr did not rely solely on the dispatch from METCAD; he relied on a request from his supervisor. When Darr and Morgan, while en route, received word that Reynolds had left the vicinity of Jamison's house, Darr and Morgan split up and headed in different directions in order to find Reynolds. Reynolds then admitted that he had been near Jamison's house and that Jamison did have an order of protection against him; he claimed he had an exception to visit his grandparents. Darr, checking the usual sources for such information, found no such exception, and arrested Reynolds.

Reynolds seeks leave to conduct additional discovery – to depose Champaign County Sheriff's Deputy Goodwin, Sgt. Morgan, and the METCAD dispatcher on duty at the time of the Jamison's 911 call to see what they can recall about a routine matter that happened more than a year ago. A transcript of the 911 call would have been more reliable and, although Reynolds had leave to obtain records from METCAD and the City of Urbana, he did not provide a transcript of the call. Reynolds also wishes to depose Jamison about the existence of a romantic relationship with Darr, a matter Jamison has adamantly denied by affidavit – and about which Reynolds opted not to question Darr.

Further discovery will not lead to issues of *material* fact. The motions for summary judgment [#16, #34] are granted. This case is terminated. The parties shall bear their own costs.

Entered this 30th day of March, 2006.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE